**Becky BRIDGES**

v.

**Mickey BRIDGES.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Oct. 28, 2004 Session.

Nov. 23, 2004.

Permission to Appeal Denied by
Supreme Court May 2, 2005.

Charles David Buckholts, Oak Ridge, Tennessee, for Appellant, Becky Bridges.

April Carroll Meldrum and Sal W. Varsalona, Clinton, Tennessee, for the Appellee, Mickey Bridges.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

This case presents the issue of whether a qualified domestic relations order which awarded the husband's navy retirement benefits one-half to the husband and one-half to the wife can be altered more than one year later to specify the equal division of the cost of living allowance. We hold that the trial court's order allowing the cost of living allowance to be divided equally between the husband and wife was a proper clarification of its previous order, and not a modification of the original order.

Appellee Becky Bridges ("Wife") and Appellant Mickey Bridges ("Husband") were awarded a divorce in the Chancery Court for Anderson County by a final order entered on March 26, 2001. Among other things, this order decrees that, by agreement of the parties, Wife shall be awarded "one-half (1/2) of the Defendant's retirement from the United States Navy" and Husband "shall retain one-half of his retirement from the United States Navy." The order further provides that "Husband shall execute any and all necessary documents to facilitate said transfer, including but not limited to, a Qualified Domestic Relations Order." Thereafter, on June 26, 2002, *nunc pro tunc* to March 26, 2001, the trial court entered a clarifying order which substitutes the following language for the two sentences in the original order which state, "The Husband shall retain one-half (1/2) of his retirement from the United States Navy." and "The parties agree that the Husband shall execute any and all necessary documents to facilitate said transfer, including but not limited to, a Qualified Domestic Relations Order.":

> The Plaintiff Wife is awarded a percentage of the Defendant Husband's disposable military retired pay, to be computed by multiplying 50% (fifty percent) times a fraction, the numerator of which is 278 (two hundred and seventy eight) months of marriage during the Defendant Husband's creditable military service, divided by the Defendant Husband's total number of months of creditable military service at retirement. For the purpose of this computation, the Defendant Husband's military retired pay is defined as the military retired pay the Defendant Husband would have received had the Defendant Husband retired on March 26, 2001, at the rank of Chief Petty Office (E–7) with 22 (twenty-two) years and 7 (seven) months of creditable service.

We would note at this point that it appears that the clarifying order erroneously decrees the substitution of the above language in part for the sentence "The parties agree that the Husband shall execute any and all necessary documents to facilitate said transfer, including but not limited to, a Qualified Domestic Relations Order." It is apparent from our review of the parties' briefs and the record as a whole that it was not the intent of the parties or the trial court to replace this language in the original order, but rather the language which provides that Wife shall be awarded "one-half (1/2) of the Defendant's retirement from the United States Navy" and "The Husband shall retain one-half (1/2) of his retirement from the United States Navy."

Apparently, based upon the formula set forth above, Wife's award of Husband's retirement pay was calculated to be $1,061.50 per month. Later, Wife received the following letter dated October 28, 2002, from Defense Finance and Accounting Service:

Dear Becky L. Bridges:

Your community property award for a division of the above member's disposable retired pay has been modified per the enclosed Clarifying Order issued by the Chancery Court of Anderson County, Tennessee effective November 2002.

Below is an explanation of how we computed the amount:

$50\% \times 278/288 = 48.2638\%$

Hypo gross pay: $.025 \times 22.5833$ years (22 years and 7 months) $= .564582 \times$ $2890.80 (active pay of an E7) $=$ $1632.09

Actual gross pay: $2123.00

Adjustment: $1632/$2123.00 $=$ $.768723 \times 48.2638\% = 37.1014\%$

*Since no Cost of Living Allowances were specifically awarded in either order, we had to convert the percentage to a fixed dollar amount, so your award has been modified as follows:*

*$37.1014\% \times \$2123.00 = \$787.66$ per month.*

Should you have any questions give our Customer Service Department a call at (216) 522–5301, or write me at the above address.

Sincerely,

David Vicens,

Paralegal Specialist

(Emphasis added.)

After receiving this letter, Wife filed a motion which states that "according to the Defense, Finance and Accounting Service, the community property award for division of the retired pay included no cost of living

allowance; therefore, the pay to the Plaintiff was reduced from One Thousand, Sixty-one Dollars and Fifty Cents ($1,061.50) per month to Seven Hundred Eighty-seven Dollars and Sixty-six Cents ($787.66) per month." The motion requests that the trial court "modify or clarify the Final Decree of Divorce, and/or the Clarifying Order to allow the Plaintiff to receive as was the parties' intention and the Court's understanding, fifty percent (50%) of the Defendant/Husband's creditable military service pay in the amount of One Thousand, Sixty -one Dollars and Fifty Cents ($1,061.50)." On December 8, 2003, the trial court entered its order upon this motion decreeing ... "the Plaintiff/Counter–Defendant, Becky Bridges, be awarded a cost of living allowance regarding the husband's military retirement due to the fact the Court contemplated the cost-living allowance at the initial hearing." Thereafter, Husband filed a motion to reconsider which was denied by the court and this appeal followed.

 The sole issue we address in this appeal is whether the trial court's order awarding Wife cost of living allowances as part of Husband's military retirement constituted a prohibited modification of the trial court's final order of divorce.

 As noted, the division of property set forth in the divorce decree in this case is based upon the parties' agreement in that regard. The interpretation of a written agreement, such as that reflected in the trial court's decree, is a matter of law, not fact, and, accordingly, our review is *de novo* on the record with no presumption of correctness. *Wills & Wills, L.P. v. Gill,* 54 S.W.3d 283, 285 (Tenn.Ct.App.2001) and Tenn. R.App. P. 13(d).

Husband contends that the parties' agreement as set forth in the order of final divorce did not provide that Husband's disposable retirement pay would include

cost of living allowances. He maintains that the order of final divorce was a contract between the parties, that they agreed to be bound by its provisions. and that, although wife could have requested the inclusion of cost of living allowances, she failed to do so. Husband argues that the trial court erred because it "substituted its own interpretation of the agreement with the intent of the parties based upon the plain contractual language." Finally, Husband points out that under Tennessee law court orders distributing marital property are not subject to modification.

In *Hays v. Hays*, C/A No. 02A01–9406–CV–00128, 1995 WL 475449 (Tenn. Ct.App. W.S., filed August 11, 1995) we recognized the following guidelines as being applicable to an analysis of a contractual agreement:

> In interpreting contracts, the cardinal rule requires the court to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn.App.1992). Absent an ambiguity in the terms, the intention of a contract is determined from the language of the contract. *HMF Trust v. Bankers Trust Co.*, 827 S.W.2d 296, 299 (Tenn.App.1991). The words expressing the parties' intentions should be given their usual, natural and ordinary meaning. *Park Place Ctr. Enter., Inc. v. Park Place Mall Assoc.*, 836 S.W.2d 113, 116 (Tenn.App.1992).

*Hays*, 1995 WL 475449 at *1.

It is our determination that cost of living allowances were included in the award of Husband's retirement pay as set forth in the order of final divorce and subsequent clarifying order entered June 26, 2002, *nunc pro tunc* to March 26, 2001. We are guided in this determination by the decision of the Supreme Court of this state in *Johnson v. Johnson*, 37 S.W.3d 892 (Tenn. 2001).

In *Johnson* a marital dissolution agreement ("MDA") entitled wife to one-half of husband's "military retirement benefits." After the parties' divorce and upon husband's retirement the MDA was implemented without incident for approximately one year. Husband then elected to receive a portion of his retirement pay in the form of tax-free disability benefits and his retirement pay was reduced to compensate for payment of these disability benefits. Consequently, the portion of his retirement benefits being paid to wife was also reduced. In response, wife petitioned the trial court to modify the final divorce decree to award additional alimony to offset the reduction in her portion of husband's retirement benefits. The Supreme Court noted that, although under Tenn.Code Ann. § 36–5–101(a)(1) modification of an order directing payment of alimony is allowed upon a showing of a substantial and material change in circumstances, "court orders distributing marital property are not subject to modification", citing *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993). The Court determined, however, that wife's petition was, in fact, not a petition to modify, but rather a request for enforcement:

> We are of the opinion, however, that [wife's] characterization of her petition as one seeking "modification" is incorrect. The whole of her argument and the remedy she seeks indicate that she desires no more than that which she originally received at the time of [husband's] retirement: one half of the military retired pay he was entitled to receive at the time of his retirement. [Wife's] primary argument that the term "retirement benefits" as contemplated by the MDA was intended to include both [husband's] "retired pay" and "disability benefits." She, therefore, claims that the parties agreed that

she should receive one half of [husband's] post-employment military compensation in whatever form it might be paid. This argument does not support a need for modification of the divorce decree. Instead, it alleges that the parties agreed to a course of action, that the trial court ordered that action, and that [husband] has failed to perform as ordered.

*Johnson,* 37 S.W.3d at 895–896.

With respect to interpretation of the phrase "all military retirement benefits" used by the parties in their MDA, the Court stated as follows:

> We find that "retirement benefits" has a usual, natural and ordinary meaning. In the absence of express definition, limitation, or indication to the contrary in the MDA, the term comprehensively references *all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military. Id* at 896.

The Court held that wife's interest in husband's retirement benefits vested when the trial court entered the divorce decree and could not be unilaterally altered by husband's decision to accept the disability benefits.

In accord with *Johnson,* we conclude that the trial court's order of December 8, 2003, by which Wife was "awarded a cost of living allowance regarding Husband's military retirement" was not a modification of the original order, but was an order of clarification, the purpose of which was to facilitate enforcement of the final order of divorce. We hold that the term "retirement" is subject to the same definition the Court applied to the phrase "retirement benefits" in *Johnson* and adjudge that the "usual, natural, and ordinary meaning" of "retirement" includes cost of living allowances since there is no proof that such allowances are not amounts "to which the retiree would ordinarily be entitled as a result of retirement from the military."

A recent opinion of this Court, *Jordan v. Jordan,* 147 S.W.3d 255 (Tenn. Ct.App. E.S., 2004), offers additional and alternative support for our conclusion that the trial court's order of December 8, 2003, was not an order of modification.

In *Jordan,* a judgment of divorce provided that wife receive benefits under husband's pension and/or retirement plan. Upon motion of wife, a subsequent order was entered which directed the parties to prepare and present a Qualified Domestic Relations Order ("QDRO") for the pension/retirement benefits allowed wife under the divorce judgment. Wife did not file the proposed QDRO until over ten years after entry of the judgment for divorce and husband argued that wife's attempt to enforce the judgment by presenting the proposed QDRO was barred under Tenn.Code Ann. § 28–3–110 which requires that an action on a judgment be commenced within ten years after accrual. Under the facts in *Jordan,* the administrator of husband's pension plan had not approved the QDRO. On appeal we concluded that wife's attempt to obtain the plan administrator's approval of the proposed QDRO and its entry was not an action to enforce the divorce judgment:

> The plan administrator in the instant case has yet to prove the proposed QDRO. Hence, the trial court's decree cannot be enforced against the "holder of the purse strings." Any attempt to "enforce" the trial court's validly-entered division of Husband's pension plan would be futile. We conclude from all of this that the approval of the proposed QDRO is adjunct to the entry of the judgment of divorce and not an attempt to "enforce" the judgment. It is an essential act to bring to fruition the trial court's decree regarding a division of

Husband's interest in the Dupont pension plan. Until the proposed QDRO is approved by the plan administrator and entered by the trial court, the act of the trial court in dividing the pension plan *is not complete and hence not enforceable.* (Emphasis in original.)

*Jordan,* at 262.

■ As noted by the Tennessee Supreme Court in *Johnson, supra,* a court order distributing marital property is not subject to modification. Husband contends that the trial court's inclusion of cost of living allowances as part of his military retirement constitutes a prohibited modification of the order of divorce. Based upon the authority of *Jordan,* we find no merit in this argument. As the trial court's judgment in *Jordan* was not yet subject to enforcement absent approval of the plan administrator, so in the matter before us, the order of divorce was not yet subject to modification absent clarification that Husband's retirement included cost of living allowances. In each case, the act of the trial court in dividing the parties property was incomplete.

■ Wife contends that Husband's appeal of this case is frivolous; however, our review of the record compels us to disagree. Accordingly, Wife's request that she be awarded attorney's fees, court costs and accrued interest on that basis is denied.

The judgment of the trial court is affirmed and this case is remanded for further proceedings consistent with this opinion. Costs of appeal are adjudged against the Appellee, Mickey Bridges and his surety.